We're now ready for case number four, United States against Ladonta Gill and Dana Bostic. And you are Mr. Thompson? Yes, Your Honor, Michael Thompson on behalf of Dana Bostic. Good morning and may it please the court. Mr. Bostic presents the relatively straightforward proposition that a criminal defendant needs to be able to rely on statements made by the district court to accurately reflect the court's reasoning for imposing a sentence. And when a defendant cannot do that, there's a fundamental unfairness that arises. Well, here's my problem. You make an argument that the district court judge didn't place his reasonings into the record for the first sentence, however, was vacated and remanded and the district court judge adequately, surely explained his reasoning during the second sentencing. So even if we should assume that the judge didn't sufficiently place his reasoning into the record in the first sentencing, of what moment is it that could that be in an appeal of the second sentence? There's a disconnect for me. And Your Honor, I can't address that. The reason that there is a problem with it is because Mr. Bostic detrimentally relied upon the statements made by the district court at the first sentence when he was addressing the 3553 factors during the second sentencing. When the government asked to reimpose the original sentence, a sentence that would be far above the now applicable guidelines, Mr. Bostic's counsel made the argument that, well, come on, nobody would even be talking about an above-guideline sentence if he hadn't already been sentenced under guidelines that are no longer applicable. The only reason... I mean, even in the first sentencing, accepting your link between the two, I mean, I was left myself with no doubt that he was, he actually said a lot of very interesting things about the Seventh Circuit's law and about other such editorial comments, but he pretty much says, I don't think the stash house thing makes any sense. I know it's about to go. I have, I think I need to do this under 3553A. I mean, I thought that it was pretty clear on the record as these things go, what he thought he was doing and the sentence winds up, not a life sentence, but it does wind up above what the range would have been without this stash house enhancement. Why would he, yeah, why would he be required to say all that a second time? Well, because he didn't quite say it, Your Honor. What he said is that there may be some unfairness involved in opposing the guidelines ex post facto, but the appropriate place to consider that rather than under the guidelines would be under Section 3553. So that's where I will consider it. But then when he discusses the 3553 factors, which he did at some length, that was not one of the factors he discussed. He mentioned various parts of Mr. Bossack's background and violence in the case and things of that nature. He did not discuss the ex post facto issue. He did not say that he had considered it or how he was considering it. But he already said he was going to do it. He said he would. Why did he have to repeat it again? Well, it was two days later, Your Honor, and it very well may have slipped his mind. This was a long hearing. When he said he was going to consider it, there was witness testimony after that. There were arguments on other issues. The issue was never brought up again. Listen, nothing escapes Judge Canelli's mind. Your Honor, I don't dispute that. And I don't believe he did anything intentional here, Your Honor. But the problem is that he never explained, even if he was going to consider it, even if he intended to consider it, he never explained what weight he would give it. He didn't say, oh, I will effectively reduce the guidelines by two levels, even though I have to apply them. That's what he said he did later at re-sentencing. He never said that that's what he was doing at the time of the original sentence. What he said when he calculated the range and imposed the sentence is, well, I'm imposing this sentence. It's in the middle of the guideline range. He didn't say, oh, I'm imposing this sentence, which is in the middle of the guideline range that really applies, but it's actually above the guideline range I'm acting like I'm imposing for him because of all the other issues that I need to depart upward for. He didn't say that. But he does say he's going to take into account the Stash House business at 3550 after he says he thinks that we were off in the wrong direction, which, as it turned out, the Supreme Court also thought, but by a five to four decision, I might add. But anyway, that is all water under the bridge. And at this point, isn't the issue for us whether there was procedural irregularity? He does explain he's going to go above the guidelines. He's already talked about Mr. Bostic's rather sorry record that he thinks he needs a bigger sentence than just the guideline range. Well, he said that after Mr. Bostic had already submitted all of his sentencing arguments, after his counsel had made his position clear on what the sentence should be, and after he'd only responded to the government's request asking for an above guideline sentence by saying they were only doing that because an earlier sentence had been imposed with a higher guideline range. If the counsel had known that the court was already considering imposing an above guideline sentence, the argument could have been tailored more toward that and the reasons why that would be inappropriate, as opposed to relying on what appeared to be the court's position that a sentence in the middle of the applicable guideline range was the appropriate sentence. The standard is different for whether you're going to depart or vary from the guidelines, especially for an upward departure variance. The standard is for where within the guideline range a sentence should be imposed. And Mr. Bostic wasn't able to accurately and adequately address the right argument, basically, because he relied upon the court's earlier description of the reasoning it was using for imposing the sentence. Does he ever tell that? I mean, the transcript sort of stops here. But I don't remember him raising that to Judge Connelly after he finds out what the new sentence is going to be, saying, wait a minute, you didn't give me an opportunity to put on the table some things I would have talked about. You're right. I believe that was not addressed with Judge Connelly, but I don't think that's dispositive. But does the judge have to give any? Why does the judge have to tell him? Why does he have to tell him what? As long as it's in the facts of the case, why does the judge have to describe it to him? Well, the problem isn't necessarily just that he's not telling him something. It's that he's telling him something that gives an inaccurate impression of what the reasoning actually is. So that's a procedural argument, not a substantive unreasonableness argument. On that issue, yes, Your Honor. And with that, I'll reserve the remainder of my time. Thank you very much. Yes, we'll hear from Mr. Hillis, I believe. May it please the Court, my name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent with Dr. Gill, counsel. Mr. Gill raises two issues on appeal. First is with regard to the criminal history, and we contend that it is miscalculated here. By virtue of this Court's decision in Jenkins, we believe we have strong grounds. The three criminal history points that were assessed for the AUUW conviction, the aggravated unlawful use of a weapon, is problematic because the Illinois Supreme Court, most recently in Burns and previously in Aguilar, has stated about the unconstitutionality of the AUUW statute. So this has kind of been a moving target through this litigation, hasn't it? Yes. First the class fours and then the class twos. Yes. So this is a plain error argument you're making. It is, as it was in Jenkins. But look, his conviction specifically involved a previous conviction. So doesn't that language alone indicate that it's a class two form of the AAUW, you rather than a class four? I don't believe it was clear from the record, but in any event, Aguilar dealt with the class four, Burns dealt with the class two, so under the Illinois Supreme Court precedent of Burns and Aguilar, we're on strong footing to say that the AUUW conviction, be it a two or be it a four, is invalid. And therefore, under the guidelines, I think it's 4A1.2 Note 6, the invalid, the constitutionally invalid conviction, means that that is criminal history that shouldn't be counted. And Burns is hot off the press, basically, right? Thank goodness. And right on point. So we have the three points there and then the two additional points as a result of him committing the incident of offense while on parole. So it's really five points. Five total points of his six. Dramatically reduces his guideline range from what it was down to 188 to 235. It's a mandatory minimum sentence of 240 months, but the judge has imposed in this case a 280-month sentence, which is now incorrect. But under Jenkins, the procedural error in assessing the guidelines, excuse me, assessing criminal history in the fashion that was done is procedural error and it should be a basis, as it was in Jenkins, under a plain error standard of review, for this court to vacate, remand, so that he can be resentenced with the correct criminal history calculation. Now, if we were to agree with you on that, there wouldn't really be much point to saying a lot about the supervised release conditions, since that would all have to be revisited anyway in light of Thompson, et cetera. Indeed it would. I put it in there because it's an important procedural hook. It's a vehicle for him to get a resentencing. So if this court were not inclined to be persuaded around the criminal history, we would have then the fallback position in the procedural hook of the supervised release conditions being wrongly imposed. And I'll say this briefly, insofar as the government says that there was waiver on this, there clearly wasn't, as this is an intervening development in this court's jurisprudence that happened in 2015. Of course, this sentencing happened at the tail end of 2014, September of 2014. So the intervening decisions of Thompson and Kappus, those weren't things that were vehicles for him to argue at the time of his sentencing hearing. Accordingly, the issue couldn't be waived. It couldn't have been raised, in fact. And so we believe for both bases that we've presented here, the appropriate result would be to vacate and remand for resentencing. Unless this court has additional questions, I reserve the balance of my time. All right. Thank you. Thank you. Ms. Church. Good morning. May it please the court. I'd first like to address the issues raised by Mr. Gill, and then turn to the issues raised by Mr. Bostic. As Mr. Gill's counsel just commented, it is the government's position that the two issues he has raised to this court were waived by his failure to raise them in his initial appeal. The two issues were beyond the scope of this court's remand in United States v. Adams. In that opinion, this court expressly limited the district court's authority to reopen the guideline range because the defendant had already won opportunity to present to the district court arguments concerning the guidelines range calculation. But his second sentencing takes place before Thompson. Right. I mean, that would be a very aggressive form of waiver when this is still in process, when a point that wasn't there isn't raised. The first time it goes up on appeal, then it goes back down for the second sentencing. And the case is still not decided. And now it is decided, of course. And we have, as you well know, remanded any number of cases for full resentencing in light of Thompson, Kappus, et cetera. And the court in Thompson, of course, offered a full resentencing rather than one limited to just the discretionary conditions of supervised release. So what's the government's position as to why, if we were to send this back, the remand would be limited? Why would it be limited? Your Honor, if this case were to be remanded, if issue preclusion does not carry the day for the purposes of this appeal, a full resentencing would be appropriate. We would ask that this court not consider the second issue in terms of the appropriate calculation of Mr. Gill's guideline range as including the aggravated unlawful use of a weapon by a felon so that we revisit all of that. I'm sorry. I garbled that, Your Honor. I'm sorry. Could you repeat the last part? Yes, Your Honor. We would ask for a full remand to consider both issues, including the appropriate calculation of his advisory guideline range as including the AUUW conviction. You're asking for the same thing the defense counsel is. If we get to that point, Your Honor. It's still the government's position, as we say in our brief, that a waiver should govern. You're not waiving your argument. No, Your Honor. We're not. She's trying not to anyway. But why shouldn't, in light of this, the Illinois Supreme Court's decision in People v. Burns, which I recognize was just December 17th, so that's why I said hot off the press, the entire AUUW statute is now covered by the Aguilar reasoning. So it doesn't matter if he had a Class 2 or a Class 4 felony, which is something I haven't been able to nail down on the record, but suppose it's Class 2. It's still not something that's available anymore. Surely that must qualify for plain error. Your Honor, that's something that, well, at the time that the district court imposed the sentence following the resentencing, Burns' decision had not been decided. That's right. I said it was just December 17th. And so there was no prior case deciding that the Class 2 form of the felony was unconstitutional. So there was no plain error in that regard. But there is now. I mean, when a statute is substantively unconstitutional, as we've seen, say, with all of this giant line of Johnson cases, that means it was always unconstitutional. It's not like a procedural flaw was there that, you know, you have to get into the question whether it's some fundamental error or whether it's waivable or all the rest of it. If the statute's unconstitutional, it's unconstitutional. We would ask that the court not reach that decision in this particular appeal. Why not? Because this has not been something that has been fully briefed on the merits. There have only been submissions to this court based on the recent decision in Burns and Rule 28J letters. The full scope of not only the conviction, but as well as the constitutionality and whether a district court should even consider the constitutionality of it is something that the government would like to address in the first instance in the district court, develop that record. What kind of record do you need as opposed to simply if you are asking for the opportunity to file supplemental briefs on this issue,  But what do you need in the way of a record? That this was a class two form of the felony. Right. And Burns is about class two felonies. Yes, Your Honor. Whether or not the district court should consider the conviction as application note six to section 4A 1.2J directs, they may be considered under the adequacy of the criminal history category. So whether or not it was appropriate for the district court to effectively impose the same criminal history category for this defendant, putting aside the constitutionality of that conviction, whether the adequacy of his criminal history is represented when such a conviction has been found to be unconstitutional. That's not something the district court, the constitutionality is not something the district court needs to reach to resolve that issue. Well, but if the district court knows from the Illinois Supreme Court now that the class two felonies, even let's just assume for the sake of argument that is what he was convicted of, certainly seems likely. But we now know that's unconstitutional. And yes, the application note talks about the use of convictions that are now void and they shouldn't be done. That doesn't preclude the district court on resentencing from making any of the other decisions the court would always make, which is do I think your criminal history record adequately reflects who you are and, you know, what do I want to do with 3553A or the various things. If it's a full resentencing, those things are on the table, but against the correct legal backdrop of what this statute is. I just don't see why the question of law can't be resolved since it's been presented. The government would like an opportunity to more fully develop its arguments in that regard, in terms of the law, recognizing that no federal court has decided whether the class two form of the felony is unconstitutional. The Illinois, the state of Illinois may file a petition for a search to the US Supreme Court that is still not decided. Since this opinion is hot off the presses, there's still a variety of unknowns as to how this case law will develop within the state of Illinois and whether it will remain good law. There is certainly a good chance of that. The government recognizes that, but we would like the opportunity to more fully develop this argument in the district court and give the district court an opportunity to address it in the first instance. I think you've just elucidated everything that there is to elucidate, to be honest with you. Yes, Your Honor. We would still like the opportunity. Oh, well. If I may turn next to the arguments raised by Mr. Bostic and his appeal. As Your Honors have recognized, the district court twice more than adequately stated its reasoning for imposing the sentence that it imposed for Mr. Bostic. At the initial sentencing hearing and then following this court's remand at the resentencing hearing, the district court explained in detail why it was giving Mr. Bostic the sentence that it imposed. In the second appeal, it was 360 months. The district court explained it was imposing an above guideline sentence because the advisory guideline range did not accurately reflect the violence that was directly attributable to the defendant, to Mr. Bostic. That was what the district court said in the initial sentencing hearing. It's what he said at the resentencing hearing. So there's one thing the district judge does here that we've seen on many occasions, which is to say, you know, he says, I am not comfortable with this part of the guidelines. He has the discretion, as we all know, to say that. And so as part of his 3553A process, he kind of uses a what-if guideline range. He said, if I take the stash house out, then this is what it would be. He knows that's not what it is. He's computed the correct guideline range. So in that sense, we don't have a procedural problem. Do you see anything wrong with the use of these what-if ranges? Because that isn't really, that doesn't bubble up to the surface maybe quite as much as Mr. Bostic would have preferred. I don't see any issue with the district court effectively revising the guideline range to a level that the district court thinks is appropriate based on the 3553A factors or its disagreements with certain of the guideline applications. Because he doesn't explain in the first sentence with anywhere near the clarity that he does in the second sentencing hearing, here's, after I took the stash house out, here was the range. I went, whatever it was, one-eighth or so above that range. Here's my new range. I'm going to go up the same one-eighth. That's how he winds up, give or take, with the 360. He doesn't say it in quite those clear terms the first time around, which is why you have Mr. Thompson saying Mr. Bostic didn't know that was the target he needed to aim at. Well, he did not say it, the district court did not say it as expressly in the first sentencing, but he did say he was taking it into account. And then after the day-long sentencing hearing involving testimony, there was oral argument. At no point during that oral argument in that first sentencing hearing did Mr. Bostic's attorney raise the issue again. The district court did not need to comment on it again. The focus of that argument was on the violence, the murders, the shootings, other acts of violence attributed to Mr. Bostic. That was the focus. That was what was really driving the sentencing. In the first appeal, Mr. Bostic is raising the claim that the district court forgot to apply. It's deduction for the stash house enhancement. What the district court was clarifying on remand and at the resentencing hearing was he did, in fact, take it into consideration. And at no point in his sentencing materials did Mr. Bostic raise his claimed failure of the district court to consider it in its initial appeal, excuse me, in the initial sentencing. The government raised it. The government raised it in its sentencing memorandum. The government raised its request for an above-guideline sentence in a sentencing memorandum. Mr. Bostic was very able to respond to it in the district court at the sentencing hearing as he argued for a mid-range sentence. That may have been what he was shooting for. He knew full well the government was asking for an above-guideline sentence. Judge Cannelli adequately explained his reasons for imposing an above-guideline sentence. And so for those reasons, we ask that you affirm the judgment and conviction of Mr. Bostic. We ask that you affirm the judgment for Mr. Gill or in the alternative that you remand the matter for full consideration in the district court. All right, thank you very much. Mr. Thompson, I think you have half a minute. Briefly, while the district court's stated reasonings for imposing an above-guideline sentence were adequate and his stated reasons for the sentence he opposed would have been adequate at the first hearing, either one of them taken separately, when you combine the two, it creates an unfairness because of the misleading effect it had on Mr. Bostic in depriving him of the ability to effectively argue for what the district court was actually considering. Isn't it really clear, though, that the district court went above the guideline range because of Mr. Bostic's violence? It is clear that that's why he did it, yes. I agree with you that that is why he did it, but the problem is the way he did it. And in this case, it sort of deprived Mr. Bostic both in the first instance of the opportunity for meaningful appellate review, which is a problem sort of systematically. Well, what argument would you have made? I mean, you know, he can say I wasn't really all that violent or he can say I have other things, but other than just saying, that's why I was wondering, are you saying it's wrong for a district judge to sort of consider what the guideline range would have looked like if certain aspects weren't there? Absolutely not. The argument is more that it's wrong for the district court to sort of move the goalposts when the arguments have already been made. All right. Thank you. Mr. Hillis. I'd like to say this with regard to waiver. When this court vacated and remanded in Adams, it said, this is at 746 F. 3rd, 743, 744, 45, that he should not be able to use the accident of a remand to raise in the second appeal an issue that he could just as well raise in the first appeal because the remand did not affect it. We're not in that situation. We have Jenkins, which came out subsequent to the resentencing. We have Thompson, which came out subsequent to the resentencing. Jenkins affects criminal history. It wasn't something that he could have argued before because the AUW was valid in its class four form, excuse me, in its class two form, and now in Burns it is not. Furthermore, in regard to Thompson, those were conditions of supervised release, things that were summarily imposed, adopted once upon a time, no explanation. Again, Thompson was decided in 2015, as was Kappus. We rely on both of those. Those were not matters that could have been raised at the 2014 resentencing hearing. So what about the government's thought that it's really not appropriate at this point for this court to think about the AUW issue and that this should all be punted back to the district court? I don't think there is much for this court to think about on the AUW because the Illinois Supreme Court has already reached the decision that it's unconstitutional. I don't know what further elucidation this court should make on the issue or what benefit it would have from additional briefing. The ordinary course on unresolved issues in the state court is to punt it over to the state court and ask for an issue to be decided and then to postpone some appellate issue until we have a resolution. We're further ahead than that. We have Burns. I have nothing further. Thank you. All right. Thank you very much. Thanks to all counsel. We'll take the case under advisement.